Filed 3/30/21  In re Natalie V. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| In re NATALIE V., et al., Persons Coming Under the Juvenile Court Law. | B303484 (Los Angeles County Super. Ct. No. 19CCJP03713B-D) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>MARISOL L.,<br><br>　　　Defendant and Appellant. |  |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

Marisol L. (Mother) appeals from the juvenile court's jurisdiction findings and disposition orders declaring then-15-year-old Natalie V., then-10-year-old Vincente M., Jr. (Vincente), and then-five-year-old Eian R. dependents of the court under Welfare and Institutions Code[1] section 300 based on Mother's substance abuse and neglect and emotional abuse of the children. The court also sustained findings against the fathers of the children based on histories of substance abuse (as to two of the fathers) and one father's history of domestic violence. Mother contends there is insufficient evidence to support the jurisdiction findings against her. Mother also challenges the disposition orders removing the children from her physical custody, granting monitored visitation, and requiring Mother to participate in a drug treatment program. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Prior Dependency Cases*
The family first came to the attention of the Los Angeles County Department of Children and Family Services (Department) in 2006 based on Mother's substance abuse. The

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

1

juvenile court sustained allegations on behalf of then-eight-year-old Roberto and then-two-year-old Natalie that Mother had a history of substance abuse and was a frequent abuser of methamphetamine and marijuana, which rendered her incapable of caring for the children.  On July 31, 2007 the juvenile court terminated jurisdiction, and Natalie and Roberto reunified with Mother after she completed a substance abuse program and tested negative for drugs.

In 2011 the juvenile court sustained allegations in a new dependency petition on behalf of Roberto, Natalie, and then-one-year-old Vincente that Mother had a history of illicit drug use and use of methamphetamine, amphetamine, and marijuana; Mother and Vincente's father committed domestic violence in Vincente's presence; and Vincente's father had a history of illicit drug use and use of marijuana.  At some point the children were returned to Mother.  Then, in May 2013 Natalie and Vincente were detained again after Mother was found under the influence of illicit drugs while Natalie and Vincente were in her care.  In July 2013 the court sustained allegations in a supplemental petition alleging Mother's continued use of methamphetamine, which rendered her incapable of caring for Natalie and Vincente.[2] On June 2, 2014 the court terminated jurisdiction with a family law order granting Mother sole physical and legal custody of Roberto, Natalie, and Vincente.

---

[2]     The record does not explain why then-15-year-old Roberto was not included in the supplemental petition.

B.      *The Current Referral, Detention, and Dependency Petition*

On July 2, 2019 the Department received a referral alleging Mother and newborn Rainbow M. tested positive for methamphetamine and marijuana at Rainbow's birth.  The Department detained Rainbow after Mother and her boyfriend admitted to using drugs.  Mother stated she had a home in Mexico, and she had planned to move back after giving birth to Rainbow.  Mother claimed Vincente and Natalie, as well as then-five-year-old Eian, lived in Tijuana, Mexico with Roberto (who by then was an adult), but they visited her on weekends or on random occasions.  However, the property manager at Mother's apartment complex reported all three children lived with Mother in Mother's apartment, although the manager last saw the children prior to Rainbow's birth.  The property manager was surprised to hear about Mother's positive drug test, and she did not observe any abuse or neglect the times she saw the children.

When the social worker arrived at Mother's home for an appointment, Mother did not answer the door or the social worker's seven telephone calls.  In response to the social worker's text message, Mother stated she was not home.  Mother indicated her attorney told her that she did not have to speak with the social worker.

On August 8, 2019 the Department filed a dependency petition on behalf of Natalie, Vincente, and Eian under section 300, subdivisions (b)(1) and (j).  The petition alleged Mother had a 14-year-history of substance abuse and had abused amphetamine, methamphetamine, and marijuana, which rendered her incapable of caring for the children.  Further, Mother used illicit drugs during her pregnancy with sibling Rainbow and tested positive at Rainbow's birth.  Natalie,

3

Vincente, and adult sibling Roberto were prior dependents, and Rainbow was a current dependent of the juvenile court due to Mother's substance abuse.[3] At the August 9 detention hearing, the juvenile court detained Natalie, Vincente, and Eian from Mother and granted Mother monitored visitation. The court ordered the Department to assess Roberto for placement of all three children.

C. *The Investigation*

After the detention hearing, Mother agreed to move out of the home to allow Roberto to move in and care for the children. Roberto reported Mother's home "looked like a tornado [had] came through" with "hundreds of cockroaches, rotting food, mold, garbage, piles of bags and clothing, a stove with a gas leak, and overhanging cabinets that had fallen off the wall." Mother and her boyfriend continued to enter the apartment to sleep there. Other times, Mother would sleep in her car in the apartment building's parking structure. When Roberto confronted Mother, she became combative and asked, "Whose side are you on?" After Roberto cleaned the house, the court placed Natalie, Vincente, and Eian with Roberto and appointed Roberto the holder of the children's educational rights.

During her August 14, 2019 interview, Natalie "became emotional and cried when describing [Mother's] behaviors and their interactions, and how these affected her well[-]being." Natalie said, "In 7th grade, I missed a lot of weeks because we

---

[3] On November 27, 2018 the Department sustained allegations in a separate dependency proceeding filed on behalf of Rainbow under section 300, subdivisions (b)(1) and (j).

4

used to go to Mexico and got stranded because of car trouble and no gas, or because I had to watch my brothers." Natalie added, "Sometimes, I would wake up and there would be a note that [Mother] was going out for the day and that I'd be watching the kids and I'd miss school. She wouldn't answer the phone and later said it had died. That was for at least 2 years, I'd be watching the kids like that." Mother told Natalie she could stay in school and see her brothers if Natalie lied to the social worker about being in Mexico.

When Natalie resided with Roberto,[4] Mother had Vincente watch Eian. One day, Natalie was hit by a car in front of her school, and although Mother was called, she did not contact Natalie for at least a week and a half. Roberto could not find Mother and did not have the necessary paperwork to get Natalie treatment. Natalie and Roberto reported Mother called Natalie derogatory names, including "slut, whore, [and] bitch."

Roberto, Natalie, and Vincente all reported on Mother's drug use. Roberto found Mother "passed out in the bath[]tub with [a] bong and a meth pipe on the bathroom floor" when she was pregnant with Rainbow. When Roberto cleaned a closet near the bedroom shared by Vincente and Eian, he found "lines of meth" on a glass surface on the top shelf. Roberto indicated Mother relapsed "[e]very 3 to 5 years." Natalie, on one occasion, found drugs on her Mother's dresser, and another time she found a drug pipe in Mother's room. Roberto reported, "Natalie saw a big ass bag of dope when my mom moved out . . . [j]ust sitting on my mom's dresser." Natalie also saw a pipe in Mother's car.

---

[4]    Roberto stated he had cared for Natalie for the prior two years in the home he shared with his grandmother.

Mother told Natalie she did not use methamphetamine and it was only marijuana. Vincente reported Mother vaped and sometimes stayed in the bathroom and smoked "almost all day, or all night." He stated, "Sometimes she shakes before she falls. . . . She got in a car accident before and her eyes started changing colors and hurting after the car accident. . . . [¶] . . . [¶] It's hard for her to get up when she's in the tub. Sometimes she falls asleep in the tub all night. I've seen her face was almost all the way under water." Vincente added, "Sometimes when we're driving she closes her eyes because her eyes hurt, so I tell her when to stop and go and when to turn."

Roberto reported Vincente and Eian had not been in school for a year. As Eian explained, "We didn't have a history in any school because we only stay a little while and leave." Roberto indicated the boys had not seen a doctor in four years.

Then-10-year-old Vincente "appeared very irritated and upset" when the social worker interviewed him on August 23, 2019. Vincente "became very emotional and cried throughout his interview . . . as he described his mother's behavior and wanting to be at home in her care." Vincente said, "We know it's because mom lied to a really mean social worker about us being in Mexico and that's why we got taken away." Vincente added, "She would ask if we can please be quiet when she's talking to the social worker on the phone because last time Eian didn't be quiet and she heard the social worker say they could hear us." Vincente stayed up at night to help Mother, and sometimes he watched Eian all day. Vincente added, "I usually put Eian to bed at night because bad stuff happens to [Mother] at night." Vincente reported that sometimes when he would watch Eian, he could not

reach Mother, and when he tried to call her, she would text him that "her phone won't let her answer."

Then-five-year-old Eian was "very hyperactive" and "needed constant redirection" during his August 23, 2019 interview. Eian "had difficulty staying on topic" and "frequently stopped responding to questions, or needed reminders about the subject of [the] conservation." Eian's caregiver reported he had "significant behavior problems" at home and school. Eian deliberately destroyed school supplies, broke his bedroom window and screen, and shoved "items down the bathtub drain."

In her August 15, 2019 interview, Mother denied the children had seen her use drugs, she had left the children alone, or that she had concealed the children's whereabouts. She stated, "It wasn't that I was hiding [the children]. I just wasn't handing them over." Mother said Vincente and Eian were traveling back and forth to Mexico with her, and Roberto had volunteered to care for Natalie so Mother could focus on the boys. Mother denied she instructed the children to lie to the Department investigators. Mother said, "Why would they do that? I don't even know how to lie. My son and daughter could tell you that I can't lie." Mother said she had regular contact with Natalie while Natalie lived with Roberto, "but then they wouldn't answer the phone." Further, Mother said, "I didn't leave the kids. If I had to go somewhere I would drop them off with my older son because I know how the system works." Mother stated she got along with Natalie, but Natalie "wants me to approve of boys, and I told her I don't like the way she dresses."

Mother explained she started using methamphetamine and marijuana when she was 26 years old, then she was sober for five

years, but she relapsed for eight months, including while pregnant with Rainbow. Mother was enrolled in a drug treatment program, but she told the social worker, "I'm not going to promise that I'm not going to get high again but I'm going to try." Mother indicated she had been sober for four months. She had five negative drug tests in June and August 2019, but she failed to show up for drug testing on July 1 and 17, 2019.

The dependency investigator opined, "[W]hile [Mother] is enrolled in a substance treatment program, she appears to be in denial regarding her addiction and its effect on her children. Mother is currently choosing to live in a car with her boyfriend who is also a user of methamphetamine rather than enter an inpatient treatment program because she feels it is unnecessary . . . . The caregiver reports Mother continues to make inappropriate comments to the children regarding the case, and insists that they withhold information from social workers. The conditions of the home from which the children were detained were deplorable and unsafe. The children were routinely left to care for themselves for indefinite periods of time without a proper plan or living necessities."

D.     *The Amended Petitions*
In September and October 2019 the Department filed amended petitions adding allegations against Mother and the fathers of Natalie, Vincente, and Eian. Count b-2 of the amended petition alleged Mother intentionally concealed the children for two months and instructed the children to provide false information during the Department's investigation, and Mother had previously concealed her children and lied about their whereabouts. Count b-3 alleged Mother's home was "in a filthy,

8

unsanitary, and hazardous condition." Count b-4 alleged Mother left the children alone without making an appropriate plan for their care and supervision; forced her children to miss school to care for their younger siblings; and failed to provide them with the necessities of life. Count c-1 alleged Mother emotionally abused the children by the same conduct alleged in count b-4, instructed the children to lie to investigators, and referred to Natalie "as dumb, a bitch, whore and slut."

The second amended petition also alleged Natalie's father had a history of substance abuse and abused methamphetamine and alcohol; Vincente's father had been arrested for possession of a controlled substance; Mother and Vincente's father had a history of domestic violence; and Eian's father had a history of illicit drug use and mental and emotional problems, including a diagnosis for schizoaffective disorder.

E.    *The Jurisdiction and Disposition Hearing*

At the December 11, 2019 jurisdiction and disposition hearing, Mychal R. (Eian's father) and Vincente M., Sr. (Vincente's father) waived their rights and pleaded no contest to the allegations against them.[5] Mother submitted a progress letter from her outpatient substance abuse treatment center. The December 9, 2019 progress letter indicated during the five months Mother was in the program, she had provided 22 negative random drug tests and met weekly with a counselor,

---

[5]    Natalie's father (Pedro V.) did not attend the jurisdiction hearing, nor was an attorney present on his behalf. He has not appealed the juvenile court's findings.

actively participated in group sessions, attended 12-step meetings, and enrolled in a mental health program.

Following counsel's arguments, the juvenile court sustained counts b-1 and j-1 (Mother's substance abuse); count b-2 (Mother's concealment of the children); count b-3 (Mother's filthy and hazardous home); count b-4 (Mother's failure to make an appropriate plan for the children's care and to provide for their necessities); count c-1 (Mother's emotional abuse of the children); counts b-5 and j-2 (Pedro V.'s substance abuse); count b-7 (Mother and Vincente M., Sr.'s domestic violence in the presence of Vincente); count b-8 (Mychal R.'s mental and emotional problems); and count b-9 (Mychal R.'s use of cocaine and methamphetamine).

The juvenile court declared the children dependents of the court under section 300, subdivisions (b)(1), (c), and (j). The court removed the children from Mother's and their respective fathers' physical custody. The court ordered Mother to participate in anger management and parenting classes; a drug treatment program with random drug testing; a 12-step program with a court card; a domestic violence support group for victims; conjoint counseling with Natalie and Vincente, if recommended by their therapist; a psychological assessment; mental health counseling; and individual counseling.

Mother timely appealed.

## DISCUSSION

A. *Mother's Challenges to Jurisdiction Are Justiciable*

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's

10

jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773; accord, *In re M.R.* (2017) 7 Cal.App.5th 886, 896 ["'[a]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate'"]; *In re Briana V.* (2015) 236 Cal.App.4th 297, 309 ["[W]e need not address jurisdictional findings involving one parent where there are unchallenged findings involving the other parent."].)

An appeal is not justiciable where "no effective relief could be granted . . . , as jurisdiction would be established regardless of the appellate court's conclusions with respect to any such [challenged] jurisdictional grounds." (*In re Madison S.* (2017) 15 Cal.App.5th 308, 329; accord, *In re I.A.* (2011) 201 Cal.App.4th 1484, 1490 ["An important requirement for justiciability is the availability of 'effective' relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status."].) Nevertheless, "[c]ourts may exercise their 'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].'" (*In re D.P.* (2015) 237 Cal.App.4th 911, 917, quoting *In re Drake M.* (2012) 211 Cal.App.4th 754, 762-763;

accord, *In re Madison S., supra,* 15 Cal.App.5th at p. 329; *In re J.C.* (2014) 233 Cal.App.4th 1, 4.)

The Department contends Mother's claims are not justiciable because she does not challenge the juvenile court's jurisdiction findings against the fathers of Natalie, Vincente, and Eian.  As discussed, the fathers of Vincente and Eian pleaded no contest to the allegations against them, and none of the fathers has appealed the jurisdiction findings.  However, we exercise our discretion to reach the merits of Mother's challenge to the jurisdiction findings against her because they serve as the basis for the disposition orders.[6]

B.     *Substantial Evidence Supports the Jurisdiction Findings Under Section 300, Subdivisions (b)(1) and (j)*

1.     *Governing law and standard of review*

"Section 300, subdivision (b)(1), authorizes a juvenile court to exercise dependency jurisdiction over a child if the 'child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or . . . by the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse.'" (*In re*

---

[6]     However, because we find substantial evidence supports the allegations against Mother under section 300, subdivisions (b)(1) and (j), we do not reach whether substantial evidence supports the juvenile court's findings under section 300, subdivision (c).  (*In re I.J., supra,* 56 Cal.4th at p. 773; *In re M.R., supra*, 7 Cal.App.5th at p. 896.)

*L.W.* (2019) 32 Cal.App.5th 840, 848; accord, *In re E.E.* (2020) 49 Cal.App.5th 195, 205.) Section 300, subdivision (b)(1), requires the Department to demonstrate three elements by a preponderance of the evidence: (1) the parent's or guardian's neglectful conduct or failure or inability to protect the child, (2) causation, and (3) serious physical harm or illness or a substantial risk of such harm or illness. (*E.E.*, at p. 205; *In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561.)

Section 300, subdivision (j), provides for dependency jurisdiction when "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." As the Supreme Court explained in *In re I.J., supra*, 56 Cal.4th at page 774, "'The broad language of subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j). The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.'"

"'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we

13

determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J., supra*, 56 Cal.4th at p. 773; accord, *In re R.T.* (2017) 3 Cal.5th 622, 633; *In re D.B.* (2018) 26 Cal.App.5th 320, 328 ["We review the entire record to determine whether the trial court's jurisdictional and dispositional findings are supported by substantial evidence."].) "Substantial evidence is not synonymous with any evidence. [Citation.] To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value." (*In re M.S.* (2019) 41 Cal.App.5th 568, 580; accord, *In re J.A.* (2020) 47 Cal.App.5th 1036, 1046.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or orders." (*In re E.E., supra*, 49 Cal.App.5th at p. 206; accord, *D.B.*, at pp. 328-329.)

   2.   *Substantial evidence supports the jurisdiction findings*

Mother contends there is not substantial evidence to support the juvenile court's jurisdiction findings under section 300, subdivisions (b)(1) and (j), based on her substance abuse because she was admitted to a six-month outpatient substance abuse program in June 2019, and she made significant

14

progress in the program by September 20, as a result of which the program allowed her to attend only three instead of five days per week. Further, Mother asserts she completed the treatment program 10 days after the December 11, 2019 jurisdiction and disposition hearing. As to the hazardous conditions of the home, Mother points out Roberto had remedied the conditions by the time of the jurisdiction hearing. As to the remaining allegations that Mother left the children home alone and did not care for their needs, Mother argues there was no showing the children were at substantial risk of suffering serious physical harm. Mother's contentions lack merit.

From 2006 to 2014 Mother had three prior dependency cases arising from her abuse of methamphetamine and marijuana, which rendered her incapable of caring for her children. In June 2019 Mother and Rainbow tested positive for methamphetamine and marijuana at Rainbow's birth. Roberto and Vincente found Mother passed out in the bathtub; Vincente described Mother as vaping and smoking all the time; and Vicente described his mother driving with her eyes closed. Roberto found lines of methamphetamine in a closet near Vincente and Eian's bedroom, and Natalie found a drug pipe in Mother's room and car. Mother also placed the children in danger by leaving them home without adult supervision. Mother kept Natalie home from school to supervise her younger brothers, and later Mother left 10-year-old Vincente home alone with Eian. And Vincente and Eian did not attend school for a year or see a doctor for four years. Mother was in denial that her drug use impacted her children, and she denied the children saw her use drugs or found drugs in the home. Mother also denied she had

15

left the children home alone or had instructed the children to lie to the investigators.

Although Mother was close to completion of a six-month outpatient drug treatment program at the time of the jurisdiction and disposition hearing, Mother's extensive substance abuse history, her prior relapses, her exposure of the children to her substance abuse and drugs in the home, and her denial that her drug abuse impacted the children, supported the juvenile court's finding Natalie was at substantial risk of physical harm. Further, as discussed, Mother left the children home alone while not answering her phone, kept them home from school, coached them to lie to the investigators, and failed to take responsibility for her actions.  On these facts, substantial evidence supported the juvenile court's jurisdiction findings under section 300, subdivisions (b)(1) and (j).

C.    *Substantial Evidence Supports the Removal Order*

"'At the dispositional hearing, a dependent child may not be taken from the physical custody of the parent under section 361 unless the court finds there is clear and convincing evidence there is or would be a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being if returned home, and that there are no reasonable means to protect the child's physical health without removing the child.'" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1065; accord, *In re G.C.* (2020) 48 Cal.App.5th 257, 264-265; see § 361, subd. (c)(1).)  The juvenile court must determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based."  (§ 361, subd. (e).)

16

"In determining whether a child may be safely maintained in the parent's physical custody, the juvenile court may consider the parent's past conduct and current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention." (*In re D.B., supra*, 26 Cal.App.5th at p. 332; accord, *In re N.M.* (2011) 197 Cal.App.4th 159, 170.) "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.'" (*N.M.*, at pp. 169-170; accord, *In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

"When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012; accord, *In re V.L., supra*, 54 Cal.App.5th at p. 155 ["*O.B.* is controlling in dependency cases."].) We review the entire record to determine whether the removal order is supported by substantial evidence. (*V.L.*, at p. 155; *In re D.B., supra*, 26 Cal.App.5th at pp. 328-329; see *O.B.*, at p. 1011.)

17

Mother contends the removal order must be reversed because there was not substantial evidence removal was necessary to prevent substantial danger to Natalie. The same evidence that supported jurisdiction amply supported the removal order. Natalie did not want to live with Mother because of Mother's substance abuse and Mother's emotional abuse of her, including by calling her demeaning names. Mother blamed her deteriorating relationship with Natalie on Mother's disapproval of how Natalie dressed and the boys Natalie wanted to date, without acknowledging the impact Mother's drug abuse and neglectful conduct had on Natalie. Nor has Mother argued on appeal there were reasonable means to protect Natalie absent removal from Mother.

D.    *The Juvenile Court Did Not Abuse Its Discretion in Ordering Drug Treatment and Monitored Visitation*

"Under section 362, subdivision (d), "'[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly."'" (*In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1221; accord, *In re Daniel B.* (2014) 231 Cal.App.4th 663, 673.) "The juvenile court has authority to require a parent to submit to substance abuse treatment as part of a reunification plan as long as the treatment is designed to address a problem that prevents the child's safe return to parental custody." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1229.) ""'On appeal, this determination cannot be reversed absent a clear abuse of discretion."'" (*Daniel B.*, at p. 673; accord, *Christopher R.*, at p. 1221.)

"A disposition order granting reunification services must provide for visitation between a child and parent 'as frequent as

18

possible, consistent with the well-being of the child.'  (§ 362.1, subd. (a)(1)(A).)  In addition, section 362.1 mandates '[n]o visitation order shall jeopardize the safety of the child.'  (§ 362.1, subd. (a)(1)(B).)"  (*In re T.M.* (2016) 4 Cal.App.5th 1214, 1218; accord, *In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1100-1101.)  "The power to regulate visits between dependent children and their parents rests with the juvenile court and its visitation orders will not be disturbed on appeal absent an abuse of discretion."  (*In re D.P., supra*, 44 Cal.App.5th at p. 1070; accord, *In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.)

The juvenile court did not abuse its discretion in ordering Mother to participate in a full substance abuse program with aftercare to address her substance abuse problem.  As discussed, Mother had previously relapsed on multiple occasions.  Likewise, the court did not abuse its discretion in ordering monitored visitation with Natalie in light of Mother's prior neglect and her continuing denial of the consequences of her actions.

## DISPOSITION

The jurisdiction findings and disposition orders are affirmed.

FEUER, J.

We concur:

PERLUSS, P. J.                SEGAL, J.

19